UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-mc-00005-CMA-MEH

HOWMEDICA OSTEONICS CORP.
    Plaintiff,

v.

MORGAN SCHILLING
    Defendant.

## NONPARTY ORP'S CROSS-MOTION FOR FEES AND COSTS

Non-party ORP Surgical, LLC ("ORP"), respectfully submits this Cross-Motion for Fees and Costs, as follows:

<u>Certificate of Conferral Pursuant to D.C. Colo.LCivR 7.1(a):</u>  Undersigned counsel conferred with Stryker's counsel. Stryker opposes the cross-motion.

### Introduction

Over the last two years, ORP has incurred over a hundred thousand dollars responding to Stryker's ever-changing landscape of requests and demands, culminating in a forensic review protocol conducted by Stryker's own hand-picked expert. The report contains no findings of wrongdoing or evidence of malfeasance. ECF 145-1. To the contrary, as discussed in more detail in ORP's related response to Stryker's motion (ECF 145), the report confirms ORP's representations to Stryker and to the Court: that it had conducted diligent searches for records responsive to the subpoena. The reality is that this entire proceeding has been part of a broader strategy to dramatically increase ORP's expenses and to collaterally attack the judgment in Case No: 20-cv-01450-RBJ (the "Federal Action"). Stryker's conduct in this proceeding has been

asserted wantonly, for purposes of harassment or delay, and for the improper purpose of attacking a judgment in a separate proceeding. As a result, ORP is entitled to an award of its fees and costs as a sanction pursuant to Rule 45(d)(1).

## Additional Factual Background

ORP's contemporaneously filed response to Stryker's Motion for Reimbursement of Fees and Costs (ECF 145) sets forth an eight-page detailed factual recitation of the procedural history in this matter. *See* ECF 145 at 5-12. That history, incorporated herein by reference,[1] establishes ORP's compliance with each and every order of the Court. To highlight, over the last two years, Stryker has demanded certifications, new search terms, and searches for over a dozen specific documents already in Stryker's possession, all culminating in a forensic review protocol and an expert report, which Stryker did not even submit to the Court in support of its motion. In short, after years of crying foul, Stryker has nothing to show for its efforts or the burdens placed upon ORP, other than the production of a tiny percentage (0.018%) of documents from ORP's database arising from a search tied to never-before-requested search terms. *Id.* at 2-3, 11-12.

The tortured history of this case, and this Court's spot-on observation nearly a year ago that Stryker has been "all over the map" and "keep[s] shifting what they want or what they're saying" (ECF 72 at 55:4-57:4-10), begs the question: Why did Stryker engage in this protracted subpoena process and continue to move the goalposts until it

---

[1]   ORP initially requested that the Court expand the page limits for a combined filing of the response/opposition brief and the cross-motion for fees to twenty pages, which motion was granted. As the response and motion are now separate filings, it is unclear whether the Court intended to grant ORP leave to file two separate twenty-page filings. For brevity, the extensive factual recitation is incorporated by reference rather than being repeated here.

2

could examine ORP's litigation database? It was obvious throughout this process that Stryker's motivation was to find evidence for a collateral attack on the judgment issued against Stryker, and against its lawyers for misconduct, in the Federal Action. Indeed, ORP's counsel made the record, on July 24, 2023, that the intent of this never-ending subpoena dispute and the eventual forensic protocol was so that Stryker can find something with which to "go back in the federal action." ECF 84 at 17:15-16. Concerned about this ulterior purpose, this Court turned to Stryker's counsel, Ms. Marsh, and inquired of her in open court: "Is that a motive that you have?" *Id*., 17: 22. Ms. Marsh looked this Court in the eye and replied: "Absolutely not, Your Honor." *Id*. at 17:23. This Court, seeking to reassure ORP and undersigned counsel, then made clear: "Because I will sanction them if they do that." *Id*. at 17:25-18:1. This Court went further, stating as follows:

> If I've been used, if I've been duped into doing something that nobody informed me about and there is an ulterior motive, that will be one of the most upsetting moments of my judicial career, and I – I would be shocked if this firm would do that to me, so I don't expect that to be the case.

*Id*. at 18:1-6. Ms. Marsh then doubled down on her feigned denial of her motives, stating "And what's also upsetting is that that motive is being attributed to me when I've never . . . " *Id*. at 18:7-8.

Unfortunately, but as foretold, this Court was duped. The relevant timeline makes clear that, consistent with its ulterior motive, Stryker and Ms. Marsh have been lying in the weeds to use the forensic-protocol production in a Rule 60 motion, as follows:

3

- Stryker received ORP's forensic-protocol production at 1:17 pm on Thursday, November 9;

- At 4:23 pm that same day, called ORP counsel Chris Carrington to confer on Stryker's Rule 60 Motion, to be immediately filed.

- The next day, Friday November 10, Stryker filed its Rule 60 *Motion for Relief from Judgment* with Judge Jackson in the Federal Action, predominantly citing this Court's orders and referencing the documents it had received via this Court's protocol.

In short, Stryker's intentions can be discerned from its conduct. Stryker even admitted in the Federal Action that it had "awaited completion of [the] forensic reviews" so that it could obtain additional evidence for its Rule 60 Motion. Federal Action, ECF 476 at 6.

## Legal Standard

ORP is entitled to fees if Stryker or its lawyers, as the party issuing the underlying subpoenas, failed to "take reasonable steps to avoid imposing an undue burden or expense on the person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). If a party fails to take such steps, then the Court can impose an appropriate sanction, including attorney fees. *Id.*; *see also Night Hawk Ltd. v. Briarpatch Ltd., LP*, 2004WL1375558, *3 (S.D.N.Y. 2004) (collecting cases in which court "granted sanctions equaling most if not all of the attorneys' fees" incurred by nonparties in responding to subpoenas that violated what is now Fed. R. Civ. P. 45(d)(1)).

## Argument

A party should not be permitted to use a subpoena, in whole or in part, to collaterally attack a judgment. Stryker's course of conduct was part of an intentional scheme to burden ORP for leverage and in an effort to find evidence to collaterally attack the judgment in the Federal Action. This conduct violates Rule 45(d)(1) and merits the imposition of a sanction against Stryker.

4

In the Federal Action, Stryker asserted the exact same theories it is pursuing against Schilling in New Jersey. Specifically, Stryker asserted it was entitled to terminate a contract with ORP for cause due to Schilling's purported misconduct. Stryker was given every opportunity to conduct discovery on that theory in the underlying litigation with access to both the Court and a Special Master. After completing discovery, Stryker tried its "Schilling-claim" to Judge Jackson, who deemed Stryker's theory "crazy." Federal Action, ECF 346 at 665. Judge Jackson ultimately found that Stryker affirmatively requested and approved of much of Mr. Schilling's conduct about which it later complained: "Stryker had no qualms with it until they needed a legal argument." Federal Action, ECF 420 at 12.

Meanwhile, in the course of discovery during the Federal Action, Judge Jackson found and concluded that Stryker engaged in substantial "abusive conduct and hiding the ball," *id.* at 29, which generated a litany of discovery disputes between ORP and Stryker. Stryker even spoliated evidence, deleting highly relevant text message evidence in the Federal Action, for which it was sanctioned. *Id.* at 12.

\Throughout the litigation of the subpoenas it served on ORP, going back years to its very inception, Stryker has argued that ORP violated its discovery obligations in the Federal Action, stating "ORP either collected the information but failed to produce it, despite its clear relevance, or, in **violation of its Rule 26, 33, and 34 obligations**, failed to collect or produce this information in the Colorado Federal Action." ECF 30 at 6 (emphasis added). In short, Stryker's explicit ulterior motive in this proceeding is, and has always been, to re-litigate discovery disputes in the Federal Action and collect information and evidence with which to extricate itself

5

and its lawyers from their contract breaches and discovery sanctions via a collateral attack on the judgment.

Stryker denied that true motive on the record before this Court. ECF 84 at 17:2-18:8. This Court has already stated that it would "sanction [Stryker]" if the Court was being "duped" into permitting discovery in the Federal Action. *Id*. at 17:25-18:1. But that is exactly what happened. Stryker conferred on its Rule 60 motion within hours of receiving ORP's production of records under the forensic protocol. The next day, Friday November 10, Stryker filed its *Motion for Relief from Judgment* with Judge Jackson. In their Rule 60 motion in the Federal Action, supported by Stryker attorney Robyn Marsh's affidavit, Stryker used this proceeding to try to justify their untimely filing of the motion:

> After Stryker demonstrated ORP's many mistruths regarding the completeness of ORP's productions, in June 2023, Magistrate Judge Hegarty ordered a forensic review of ORP's document database; yet ORP delayed that review for months with baseless objections. Pursuant to the forensic report issued October 25, 2023, 16,464 documents, inclusive of families, hit on relevant search terms but were not produced by ORP in this case. Thus, Stryker anticipates additional material documents that will support Rule 60(b) relief.

Federal Action, ECF 476 at 13-14. Even in their Rule 60 motion, Stryker was compelled to overstate their case, highlighting 16,464 "hits" base on Stryker's new search terms when in reality just 260 "hits" were produced under the protocol.

Tellingly, after Judge Jackson denied Stryker's Rule 60 motion on December 28, 2023, (Federal Action, ECF 482), Stryker made no new requests for any relief from the Court in connection with the forensic protocol—apart from those addressed at a status conference concerning certain technical matters that were already outstanding. Once Stryker realized that it would not succeed on its Rule 60 motion, it immediately abandoned its subpoena process

6

pending before this Court. As demonstrated by its own conduct, Stryker's demand for direct inspection of ORP's database "[was] not proportional to the needs of the case, [was] unduly burdensome, [and] the information sought [did] not go to the heart of the matter." *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.,* 2022 WL 2316228, at *2 (N.D. Ill. June 28, 2022) (citations omitted). Stryker's actions were "'entirely without color and . . . asserted wantonly, for purposes of harassment or delay, or for other improper reasons.'" *Gen. Steel Domestic Sales, LLC v. Chumley*, 2014 WL 3057496, at *2 (D. Colo. July 7, 2014).

Stryker's explicit motive, as evinced in their own filing in the Federal Action and directly contrary to their representations to this Court, was to obtain discovery to collaterally attack a separate judgment. Indeed, Stryker's insistence on more, more, more, only stopped after Judge Jackson denied Stryker's Rule 60 motion. Stryker's conduct reveals its intent, and just as this Court previewed for Stryker and its counsel, it should sanction Stryker for what was an abuse of Rule 45.

**Request for Fees**

ORP conferred with Stryker and the parties have agreed, and request the Court adopt, a bifurcated approach to the parties' respective requests for fees: the Court should first determine *if* it is going to sanction either party and, once it has made that determination, the party awarded fees shall make its fee submission at that time. ORP intends to request all of its fees and costs incurred as a result of Stryker's improper, scorched earth approach to this subpoena proceeding. At a minimum, the Court should award ORP the fees and costs necessary to satisfy Stryker's unending demands: the costs for reactivating and hosting the database and attorney time to comply with the forensic protocol.

7

**Conclusion**

Based on the foregoing, the Court should shift ORP's fees and costs to Stryker and order ORP to file an appropriate fee petition pursuant to D.C. Colo.LCivR 54.3 within 21 days of an order.

Dated this 21st day of May, 2024, in Denver, Colorado.

<u>*s/ Benjamin W. Hudgens*</u>
Christopher P. Carrington
Benjamin W. Hudgens
**RICHARDS CARRINGTON, LLC**
1444 Blake Street, Denver, Colorado 80202
Telephone: 303-962-2690
Email: ben@richardscarrington.com
chris@richardscarrington.com
*Attorney for nonparty ORP Surgical, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 21, 2024, I filed the foregoing **NONPARTY ORP'S CROSS-MOTION FOR FEES AND COSTS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Robyn E. Marsh
Seyfarth Shaw LLP
rmarsh@seyfarth.com

Maureen R. Witt
Holland & Hart LLP
mwitt@hollandhart.com

*s/ Dyanna Spicher*
Dyanna Spicher, Paralegal

9